## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **CATHERINE MOORE,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: _____** |
| | ) | |
| **BOARD OF REGENTS OF THE** | ) | |
| **UNIVERSITY SYSTEM OF** | ) | |
| **GEORGIA and D. ALAN** | ) | |
| **RUEHLMAN in his official** | ) | **JURY TRIAL DEMANDED** |
| **capacity,** | ) | |
| | | |
| **DEFENDANTS.** | | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Catherine Moore, by and through undersigned counsel, files this Complaint against Defendants Board of Regents of the University System of Georgia d/b/a Kennesaw State University ("KSU") and D. Alan Ruehlman in his official capacity (collectively "Defendants") for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), the Family and Medical Leave Act ("FMLA"), and the Rehabilitation Act, and alleges as follows:

## I.    INTRODUCTION

1.    This case arises from Defendants' unlawful discrimination, failure to accommodate, and retaliation against a ten-year employee who was terminated after

1

requesting brief medical leave to undergo surgery connected to her lifelong disability, bilateral hip dysplasia.

2.     KSU's "Sick Leave Without Pay" policy explicitly provides that employees on unpaid medical leave have "no job protection" and the University stated in its EEOC Position Statement that when an employee takes this type of leave, the University "may release the position at any time."  This blanket policy violates the ADA because it ignores the possibility that job protected leave can be a reasonable accommodation and bypasses the individualized, interactive process and the required analysis of whether maintaining an employee's position would constitute an undue hardship.

3.     In Ms. Moore's case, KSU refused to consider any accommodation— such as brief unpaid leave or remote work—and instead summarily terminated her employment.

4.     KSU's decision was made by Mr. D. Alan Ruehlman, her supervisor, who had previously expressed frustration when employees took medical or family leave. His involvement tainted the process and reflected the same retaliatory animus he displayed in 2016, when Ms. Moore—then under his supervision—was placed on pregnancy-related bed rest and he called her absence "super inconvenient."

## II.    PARTIES

5.    Plaintiff Catherine Moore is a resident of Kennesaw, Georgia. She was employed by KSU for approximately ten years, most recently as an Academic Advisor in the Coles College of Business.

6.    KSU is a public university and is part of the University System of Georgia (USG) and, along with the USG, is governed by the policies and procedures of the Board of Regents of the University System of Georgia ("Board of Regents").

7.    Board of Regents was Plaintiff's employer within the meaning of the ADA, the Rehabilitation Act, and the FMLA.

8.    The Board of Regents and its constituent institutions, including Kennesaw State University, receive federal financial assistance within the meaning of 29 U.S.C. § 794(b).  At all relevant times, the programs and activities in which Plaintiff worked were conducted by a recipient of federal financial assistance.

9.    The Board of Regents, including its constituent institution KSU, is a public entity. Under O.C.G.A. 9-11-4(e)(5), therefore, service of process upon Defendant Board of Regents may be accomplished by serving the summons and a copy of this Complaint upon the Chancellor of the Board of Regents and the Attorney General of Georgia.

10.     More specifically, Defendant Board of Regents may be served through Dr. Sonny Perdue, Chancellor, or one of his designees in the legal department, at 270 Washington Street, SW, Atlanta, Georgia 30334.

11.     The Attorney General of Georgia, moreover, may be served through Chris Carr or one of his designees at 40 Capitol Square, SW, Atlanta, Georgia 30334.

12.     KSU has approximately 3,830 full-time benefited employees (faculty and staff).

13.     At all times relevant to this action, KSU conducted business, maintained facilities, and derived substantial revenue in the State of Georgia and is subject to the jurisdiction and venue of this Court.

14.     D. Alan Ruehlman is sued in his official capacity only for prospective injunctive and declaratory relief under the ADA and FMLA pursuant to Ex parte Young.

15.     Because Defendant Ruehlman is sued only in his official capacity as an officer of the Board of Regents, service of process will be made by serving the Board of Regents through its authorized agent and by serving Defendant Ruehlman at his official place of business in accordance with Fed. R. Civ. P. 4(j)(2) and applicable Georgia law.

16.     At all relevant times, the Board of Regents d/b/a Kennesaw State University was Plaintiff's "employer" within the meaning of the ADA, the Rehabilitation Act, and the FMLA. Defendant Ruehlman is an officer of the Board of Regents and is sued solely in his official capacity as a vehicle for prospective injunctive and declaratory relief under Ex parte Young on Plaintiff's ADA and FMLA claims.

## III.    JURISDICTION AND VENUE

17.     This Court has federal-question jurisdiction under 28 U.S.C. § 1331. Plaintiff's claims arise under the ADA (Title I), the Family and Medical Leave Act, and the Rehabilitation Act, 29 U.S.C. § 794. The Board of Regents receives federal financial assistance and, by accepting such funds, has waived Eleventh Amendment immunity for claims under § 504 of the Rehabilitation Act.

18.     Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c) because a substantial part of the events and omissions giving rise to the claims occurred in this district.

## IV.    ADMINISTRATIVE EXHAUSTION

19.     Plaintiff has exhausted her administrative remedies and complied with all statutory prerequisites to her ADA claims.

20.     Plaintiff filed her EEOC Charge on or about January 18, 2025, alleging violations of the ADA.

21.     Plaintiff has filed this lawsuit within 90 days of receiving her Notice of Right to Sue.

22.     Any and all other prerequisites to the filing of this lawsuit have been met.

## V.     FACTUAL ALLEGATIONS

### A.     Ms. Moore's Background at KSU

23.     Ms. Moore began working at KSU in 2014 and advanced to the position of Academic Advisor in the Institute of Cybersecurity Workforce Development.

24.     Ms. Moore consistently received positive performance reviews and was recognized by students and colleagues for her professionalism and dedication.

### B.     Ms. Moore's First Hip Surgery (July 2023) and ADA Accommodation

25.     Ms. Moore was born with congenital hip dysplasia, a structural deformity of the hip joint causing chronic pain and restricted mobility.

26.     In July 2023, Ms. Moore underwent the first of two planned hip surgeries to repair her right hip. She took FMLA leave beginning July 31, 2023, which was approved through October 20, 2023.

27.     When Ms. Moore's recovery extended slightly beyond the 12-week FMLA period, KSU approved a short period of additional unpaid leave as an ADA accommodation through October 31, 2023.

28.     Upon her return, Ms. Moore initially worked remotely before resuming full duties on campus.

29.     At that time, Ms. Moore did not report to Mr. Ruehlman.

**C.     The Second Planned Surgery (August 2024) and Change in Supervision**

30.     In December 2023/January 2024, between her first and second surgeries, KSU reorganized its academic advising structure, moving cybersecurity advising under the Coles College of Business.

31.     As a result, Ms. Moore began reporting to Director of Advising D. Alan Ruehlman.

32.     Mr. Ruehlman had a documented history of hostility toward employees taking protected leave.

33.     In 2016, during Ms. Moore's pregnancy, Mr. Ruehlman expressed frustration when she was placed on bed rest for complications, stating that her leave was "super inconvenient" and demanding that she reassign all her duties before departing.

34.    In August 2024, Ms. Moore underwent the second, planned surgery—this time on her left hip—as part of the same corrective treatment regimen recommended by her orthopedic surgeon.

**D.    Request for Additional Leave and Abrupt Termination**

35.    By November 2024, Ms. Moore's recovery from the August surgery was complicated as her labrum re-tore, causing her to be unable to walk. As a result, Ms. Moore was required to go through a labrum reconstruction surgery.

36.    On or about November 13, 2024, Ms. Moore formally requested additional leave through January 18, 2025 as an ADA accommodation.

37.    Ms. Moore submitted documentation through Human Resources, and her HR contact told her such requests were routinely granted if under twelve weeks.

38.    Without further communication or discussion, on November 26, 2024, HR representative Lafaye Boykins called Ms. Moore to inform her that the University had denied her request and that her employment was terminated immediately. Ms. Moore was told the decision had been made by the department.

39.    No meeting, assessment, or interactive process occurred to determine whether her leave could be accommodated or whether her duties could be temporarily reassigned.

40. Ms. Moore specifically asked whether there were other options, such as working remotely during recovery, but was told no.

41. Notably, the students Ms. Moore supported were in a fully online major and therefore there was no need for Plaintiff to attend work in person.

42. KSU's Non-FMLA Medical Leave (Sick Leave Without Pay) policy states that there is "no job protection" for employees on unpaid medical leave.

43. KSU also stated in its EEOC Position Statement that "The University may release the position at any time. Under KSU's non-FMLA leave policy, the department is not required to reinstate an employee to their original position or to an equivalent role upon returning from leave."

44. This policy/practice contravenes the ADA's mandate that employers engage in the interactive process and provide employees with job protected leave when it enables an employee with a disability to return to work and perform their essential job functions, unless doing so would cause an undue hardship to the employer.

**E.    Additional Leave was Feasible; However, KSU Refused to Consider Any Alternatives**

45. At the time of her request, there were approximately twenty academic advisors across the College of Business and related programs.

46.     Cross-training among advisors was common practice, and several advisors were already trained to assist Cybersecurity students.

47.     Ms. Moore's caseload could easily have been redistributed temporarily with minimal impact. However, KSU never explored these options.

## COUNT I
### Disability Discrimination in Violation of the ADA Against Defendant Ruehlman for Prospective Injunctive/Declaratory Relief

48.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

49.     At all times relevant hereto, Plaintiff's employer, the Board of Regents d/b/a Kennesaw State University, has been subject to the requirements of Title I of the ADA, and Defendant Ruehlman is sued in his official capacity solely for prospective injunctive and declaratory relief under Ex parte Young.

50.     At all times relevant hereto, Plaintiff was an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)(A).

51.     At all times relevant hereto, Plaintiff was an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)(B) inasmuch as she has a record of an impairment as defined by the Act.

52.    At all times relevant hereto, Plaintiff was an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)(C) inasmuch as she was regarded as a person with an impairment as defined by the Act.

53.    Defendant is, and at all times relevant to this litigation was, aware of Plaintiff's disability and history and record of disability.

54.    Plaintiff is, and at all times relevant hereto was, a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential functions of her job.

55.    Defendant discriminated against Plaintiff in violation of the ADA by taking adverse actions against her, including, but not limited to, terminating her employment.

56.    Defendant's actions amount to a violation of Section 102 of the ADAAA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

57.    Plaintiff seeks prospective injunctive and declaratory relief and her attorneys' fees/costs.

## COUNT II
### Failure to Accommodate in Violation of the ADA Against Defendant Ruehlman for Prospective Injunctive/Declaratory Relief

58.    Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

59.    Plaintiff was, with or without a reasonable accommodation, capable of performing the essential functions of her job.

60.    Defendant discriminated against Plaintiff based upon her disability by refusing her accommodation request.

61.    Defendant failed to engage in the interactive process following Plaintiff's alleged exhaustion of her FMLA leave by, among other things, determining whether she could work from home, come back to work with other accommodations, perform the job duties of another position, etc.

62.    Plaintiff seeks prospective injunctive and declaratory relief and her attorneys' fees/costs.

## COUNT III
### ADA Interference Against Defendant Ruehlman for Prospective Injunctive/Declaratory Relief

63.    Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

64.    At all times relevant hereto, Plaintiff was an individual with a disability and an otherwise qualified employee who could perform the essential functions of her position with or without reasonable accommodation.

65.    At all times relevant hereto, Plaintiff's employer, the Board of Regents of the University System of Georgia d/b/a Kennesaw State University, was subject to Title I of the ADA. Defendant D. Alan Ruehlman is sued in his official capacity only as an officer of the Board of Regents for the sole purpose of obtaining prospective injunctive and declaratory relief under the doctrine of Ex parte Young.

66.    Plaintiff exercised, and attempted to exercise, her rights under the ADA by, among other things, requesting reasonable accommodations for her hip-related disabilities, including additional unpaid medical leave beyond twelve weeks, related scheduling flexibility, and other modifications, and by opposing Defendant's unlawful disability-related practices and policies.

67.    Section 503(b) of the ADA, 42 U.S.C. § 12203(b), makes it unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of her having exercised or enjoyed, any right granted or protected by the ADA.

68.    Acting under color of state law and in his official capacity, Defendant Ruehlman interfered with Plaintiff's exercise and enjoyment of her ADA rights by adopting, maintaining, communicating, and/or enforcing a categorical "Sick Leave Without Pay" policy and practice that expressly provides that there is "no job protection" for employees who take medically necessary unpaid leave outside of the

FMLA, without considering whether additional leave would constitute a reasonable accommodation or would pose an undue hardship.

69.    Defendant Ruehlman further interfered with Plaintiff's ADA rights by, among other things, refusing to engage in an individualized, good-faith interactive process regarding additional leave or other accommodations, and conditioning Plaintiff's continued employment on her immediate return to work despite her ongoing disability and medical restrictions.

70.    Defendant Ruehlman's adoption, communication, and enforcement of the "no job protection" policy, and his actions and statements to Plaintiff, would dissuade a reasonable employee from requesting or using leave or other accommodations to which she is entitled under the ADA and had the effect of coercing, intimidating, threatening, and interfering with Plaintiff in the exercise and enjoyment of her ADA rights.

71.    As a direct and proximate result of Defendant Ruehlman's interference with Plaintiff's ADA rights, Plaintiff was deterred from fully exercising those rights and suffered harm, including the loss of her employment, loss of wages and benefits, and other injuries. Plaintiff seeks only prospective declaratory and injunctive relief and attorneys' fees and costs on this claim.

72.     Pursuant to 42 U.S.C. §§ 12117 and 12203, and the doctrine of Ex parte Young, Plaintiff is entitled to appropriate declaratory and prospective injunctive relief against Defendant Ruehlman in his official capacity, including, but not limited to: (a) a declaration that the "Sick Leave Without Pay" policy and related "no job protection" practices, as applied, unlawfully interfere with ADA rights; (b) rescission and revision of such policies to require an individualized, interactive assessment of additional medical leave and other reasonable accommodations; (c) training of human resources personnel and managers regarding ADA compliance and interference; (d) reinstatement of Plaintiff to her former or a comparable position with reasonable accommodation; and (e) her reasonable attorneys' fees and costs.

**<u>COUNT IV</u>**
**Retaliation in Violation of the ADA Against Defendant Ruehlman for**
**Prospective Injunctive/Declaratory Relief**

73.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

74.     Plaintiff engaged in protected conduct by requesting ADA accommodations, including the need for additional leave.

75.     Defendant denied the request and terminated Plaintiff's employment.

76.     Defendant retaliated against Plaintiff for engaging in protected conduct.

77.     Defendant's actions in retaliating against Plaintiff following her accommodation requests were committed with reckless disregard for her right to be free from discriminatory treatment because of her opposition to discriminatory practices in violation of the ADA.

78.     Plaintiff seeks prospective injunctive and declaratory relief and her attorneys' fees/costs.

### COUNT V
**FMLA Retaliation in Violation of the FMLA Against Defendant Ruehlman for Prospective Injunctive/Declaratory Relief**

79.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

80.     Plaintiff was an "eligible employee" within the meaning of the FMLA in that she had been employed with KSU for more than 12 months and worked more than 1250 hours in the 12 months preceding her need for FMLA leave.

81.     During all times relevant to this lawsuit, KSU employed more than fifty (50) employees within seventy-five (75) miles for each working day during each of twenty (20) or more calendar weeks in 2023-2025 and was engaged in commerce or was part of an industry affecting commerce, making it an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(A).

82.     Plaintiff had a serious health condition as defined by the FMLA.

83.    Plaintiff engaged in, or in good faith believed that she was engaging in statutorily protected activity when she put Defendant on notice that she would need leave as a result of her serious medical conditions.

84.    Following Plaintiff's request for leave under the FMLA, Defendant took adverse action against Plaintiff and ultimately terminated her employment.

85.    Plaintiff was terminated in retaliation for her protected activity.

86.    Plaintiff seeks prospective injunctive and declaratory relief and her attorneys' fees/costs.

## <u>COUNT VI</u>
**Disability Discrimination in Violation of Rehabilitation Act § 504
Against Board of Regents for Monetary Damages and Injunctive/Declaratory
Relief**

87.    Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

88.    Defendant Board of Regents receives federal financial assistance and is subject to § 504 of the Rehabilitation Act, 29 U.S.C. § 794.

89.    Plaintiff was an individual with a disability and an otherwise qualified employee who could perform the essential functions of her position with or without reasonable accommodation.

90.    Defendant discriminated against Plaintiff in violation of the Rehabilitation Act by taking adverse actions against her, including, but not limited

to, terminating her employment, solely by reason of her disability and/or her need for an accommodation.

91.    Plaintiff seeks back pay, front pay, injunctive and declaratory relief (including, but not limited to, reinstatement, accommodations, policy changes), and attorneys' fees and costs.

## <u>COUNT VII</u>
### Failure to Accommodate in Violation of Rehabilitation Act § 504
### Against Board of Regents for Monetary Damages and Injunctive/Declaratory Relief

92.    Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

93.    Defendant Board of Regents receives federal financial assistance and is subject to § 504 of the Rehabilitation Act, 29 U.S.C. § 794.

94.    Plaintiff was an individual with a disability and an otherwise qualified employee who could perform the essential functions of her position with or without reasonable accommodation.

95.    Defendant discriminated against Plaintiff based upon her disability by refusing her accommodation request.

96.    Defendant failed to engage in the interactive process following Plaintiff's alleged exhaustion of her FMLA leave by, among other things,

determining whether she could work from home, come back to work with other accommodations, perform the job duties of another position, etc.

97.    Plaintiff seeks back pay, front pay, injunctive and declaratory relief (including, but not limited to, reinstatement, accommodations, policy changes), and attorneys' fees and costs.

## COUNT VIII
**Retaliation in Violation of Rehabilitation Act § 504 Against Board of Regents for Monetary Damages and Injunctive/Declaratory Relief**

98.    Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

99.    Plaintiff engaged in protected activity under § 504 by requesting ADA accommodations, including the need for additional leave.

100.    Defendant denied the request and terminated Plaintiff's employment.

101.    Defendant retaliated against Plaintiff for engaging in protected conduct.

102.    Plaintiff seeks back pay, front pay, injunctive and declaratory relief (including, but not limited to reinstatement, accommodations, policy changes), and attorneys' fees and costs.

**WHEREFORE,** Plaintiff demands a TRIAL BY JURY and the following relief:

(a) declare that Defendants' policies and actions violated the ADA, FMLA, and the Rehabilitation Act;

(b) prospective injunctive relief under Ex parte Young (official-capacity defendant) including: (i) reinstatement; (ii) reasonable accommodation (including brief unpaid leave and/or remote work as medically necessary); (iii) rescission of termination and correction of personnel records; (iv) policy revision eliminating any categorical 'no job protection' rule and implementing an interactive-process protocol; and (v) training for HR and management;

(c) permanently enjoin Defendants from violating, in the future, Plaintiff's rights under the federal statutes listed above;

(d) award Plaintiff full back pay, including all lost pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(e) award Plaintiff prejudgment interest as required by law;

(f) award Plaintiff front pay, including all lost future pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(g) award Plaintiff reasonable attorneys' fees and expenses; and

(h) grant such additional relief as may be just.

20

Respectfully submitted, this 14th day of November, 2025.

*s/ Jackie Lee*
Jackie Lee
Georgia Bar No. 419196
LEE MEIER LAW FIRM
695 Pylant Street NE, Suite 105
Atlanta, Georgia 30306
Telephone: (404) 301-8973
jlee@leemeier.law

**COUNSEL FOR PLAINTIFF**